# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 13-4006-CR-C-FJG |
| | ) |
| SILVER MONTANA BONILLA, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Pending before the Court is defendant's Motion to Dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(2). (Doc. 17).[1] The Government has filed its response in opposition (doc. 20), to which defendant has replied (doc. 39).

On January 16, 2013, the Grand Jury returned an indictment charging defendant with reentry after deportation in violation of 8 U.S.C. § 1326(a). On April 15, 2014, the Court held a hearing on defendant's motion to dismiss and heard testimony from defendant's immigration attorney, Michael Sharma-Crawford. Mr. Sharma-Crawford's testified as an immigration specialist to the nature and significance of the removal proceeding pending against defendant in relation to this case.

In his motion, defendant argues that the indictment should be dismissed on grounds that the Government cannot prove one of the elements in its case—that the defendant did not have the Attorney's General express consent to apply for readmission to the United States. See 8 U.S.C. § 1326(a)(2)(A). The Government argues that there is evidence to support that defendant reentered the United States without the express consent of the United States Attorney General after being deported and further that adoption of the defendant's position would in effect shield him from criminal prosecution as a result of defendant obtaining a green card via fraud.

## FACTUAL BACKGROUND

For the purposes of this motion, the parties agree to the basic facts leading up to this action. Defendant, a citizen and national of Honduras, was first subject to a deportation

---

[1] This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

proceeding before an immigration court in April 1989, after he entered the United States without inspection earlier that year. At the time, defendant was using the alias "Jorge Alberto Duran-Bonilla". The deportation proceedings initiated in 1989 would eventually be administratively closed in 1997. Before closing the matter, the Immigration Judge found that defendant appeared eligible for temporary protected status. In June 1990, defendant, using the name "Jorgé Bonilla", was convicted of felony sexual battery in California. A second deportation proceeding was initiated against the defendant, who was using the name "Jose Enrique Perez Guzman", in early 1992 after he was convicted of possession of cocaine with intent to sell in 1991. The Immigration Judge signed an order for deportation of the defendant on January 31, 1992. Using the name "Oscar Anael Molina-Duran", defendant was again charged with entering the United States without inspection later that year. This third deportation proceeding resulted in defendant's deportation pursuant to an order dated October 19, 1993.

Prior to another deportation proceeding in February 1997, defendant was convicted of indecent exposure in 1995; married a United States citizen in January 1996; and was convicted of sexual misconduct in May 1996 following a charge of two felonies, attempted rape and sodomy. When the fourth deportation proceeding was initiated against defendant, this time using his true name "Silver Montana Bonilla", his wife petitioned to change defendant's status. On January 12, 1998, the Immigration Judge waived defendant's inadmissibility on the basis of his sexual misconduct and indecent exposure convictions and granted defendant legal permanent residency (LPR) status, commonly known as a "green card", thereby authorizing defendant's ongoing presence in the United States.

In February 2001, defendant pled guilty to sexual misconduct. Four months later, he divorced his spouse who is a United States citizen. In April 2002, defendant was found guilty in Missouri of failing to register as a sex offender. Around January of 2008, defendant produced proof of his LPR status to Texas immigration officers, who proceeded to allow him to enter the United States. Defendant was arrested in November later that year for being illegally present in the United States as a result of a U.S. Citizenship and Immigration Services investigation and placed in the most recent deportation proceeding. During the pendency of this proceeding, defendant remarried his ex-wife in August 2010. In a final order, dated November 30, 2011, the Immigration Judge found that defendant was the subject of the four prior proceedings. The Immigration Judge also found that defendant obtained his LPR status through fraud by

withholding information from the Immigration Judge presiding over the 1997 deportation proceeding. Specifically, defendant failed to disclose his two earlier deportations and failed to disclose his felony convictions in 1990 for sexual battery and in 1991 for possession of cocaine with intent to sell. The Immigration Judge ultimately found defendant to be removable. This decision is currently being administratively appealed.

In the instant criminal case, defendant is charged with unlawful reentry into the United States after deportation. According to the indictment, defendant entered the United States and was found in Cole County, Missouri, on or around March of 2012, in violation of 8 U.S.C. § 1326(a) in that he did not obtain the express consent from the United States Attorney General to reapply for admission after being deported on October 27, 1993, and again on February 14, 1992.

## LEGAL ANALYSIS

Section 1326 of the Immigration and Naturalization Act (INA) under which defendant is charged makes it a crime for "an alien who once was deported to return to the United States without special permission". Almendarez-Torres v. U.S., 523 U.S. 224, 226 (1998) (abrogated in part on other grounds). The statute in pertinent part reads as follows:

(a) In general . . . any alien who—
(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
(2) enters . . . or is at any time found in, the United States, unless (A) **prior to** his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission . . .

8 U.S.C. § 1326(a) (emphasis added). The elements for establishing a violation of § 1326 are that defendant (1) is an alien, (2) was previously deported, (3) has reentered the United States, and (4) his or her reentry was without proper permission. See id.; see United States v. Rodriguez-Arreola, 270 F.3d 611, 619 n.15 (8th Cir. 2001). The defendant's motion focuses on the fourth element. To permissibly reenter the country, an alien categorized in (a)(1) of 8 U.S.C. § 1326 must first obtain the consent of the Attorney General.

In his motion, defendant states that according to the undisputed facts, the Court can resolve the ultimate issue here, which is whether an alien who reenters after deportation *with permission* can later be prosecuted for his reentry if the permission is subsequently revoked. Defendant's reliance on the fact that immigration officers allowed him to enter the United States in 2008 is misplaced. A Border Patrol agent's grant of entry does not equal the express consent

of the Attorney General as required by § 1326.  United States v. Florez-Gonzalez, 2009 WL 1033318 at *3 ("[M]ere presentation of one's green card and permission by a Border Patrol agent does will not equate to the requisite permission for reentry.  In other words, it will not serve as a valid substitute for applying for readmission into the United States."), citing United States v. DeLeon, 444 F.3d 41 (1st Cir. 2006) (S.D. Ill. April 17, 2009); see also United States v. Gonzalez-Chavez, 122 F.3d 15, 16-17 (8th Cir. 1997) (affirming the district court's exclusion of certain evidence during a unlawful reentry trial, the circuit court stated *in dicta* that defendant's green card did not address "the issue of the Attorney General's necessary express consent").  In United States v. DeLeon, the First Circuit affirmed a conviction of unlawful reentry, holding that the evidence was sufficient to sustain the defendant's conviction despite DeLeon having presented his lawfully conferred green card.  444 F.3d at 54.  Even assuming arguendo that permission from a Border Patrol agent on the basis of his LPR status does constitute permission under § 1326, defendant's status was procured by fraud so he would therefore not qualify for relief available to a person with such status.  See Kim v. Holder, 560 F.3d 833, 839 (8th Cir. 2009) ("[W]hen an alien obtains a green card via fraud, that alien is not lawfully admitted for permanent residence and is not entitled to relief" stemming from LPR status.).

In addition, an alien's mistaken belief that he or she had the requisite permission for reentry does not amount to a defense to criminal liability under § 1326(a).  Gonzalez-Chavez, 122 F.3d at 17 (holding that §1326 is not a specific intent crime), cited with approval in United States v. Vallejos-Batres, 56 Fed. Appx. at 298 (8th Cir. 2003) (per curiam).

Defendant further argued at the April 15th hearing that the Government cannot make its case against defendant before the most recent deportation proceeding reaches a final disposition. Defendant bases this position on an avenue of relief that is for the determination of the immigration court.  Specifically, as explained through the testimony of the immigration specialist, the immigration court has the ability to retroactively grant defendant permission at the point of his last reentry to the United States.  Defendant asserts that the Government cannot therefore prosecute him for unlawful reentry under § 1326.  This position is without merit.

To adopt defendant's argument goes against the integrity of the INA, its plain language and its purpose.  First, defendant's position nullifies the plain language in § 1326, that "*prior to his reembarkation at a place outside the United States or his application for admission*" the defendant must obtain the Attorney General's express consent.  8 U.S.C. § 1326(a)(2) (emphasis

4

added); also see DeLeon, 444 F.3d at 54 (discussing the issue of consent to reenter, the court indicated that what the defendant needed was "contemporaneous permission before he could legally reenter"). Section 1326 makes clear that to lawfully reenter after being deported, an alien must obtain prior consent from the Attorney General. That the immigration court can change defendant's status after the fact for the purpose of defendant's deportation proceeding is relevant to the availability of relief from the civil sanction of deportation and is not a defense to criminal liability. See United States v. Ramos-Quirarte, 935 F.2d 162, 163 (9th Cir. 1991) (per curiam) ("The fact that [defendant] obtained [special status] *after* his return to the United States is in no way a defense to the charge that his return itself was illegal under section 1326.").

Moreover, defendant's position conflicts with the historical background of the INA to assist in the control of unlawful immigration by aliens. The federal government asserts its right to control the entry of noncitizens through our borders as an integral part of the nation's sovereignty and general power to conduct foreign relations. See The Chinese Exclusion Case, 130 U.S. 581, 609 (1889) (holding that the power to exclude foreigners is an "incident of sovereignty" of the United States and the right to exercise this power "cannot be granted away or restrained") cited with approval in Fiallo v. Bell, 430 U.S. 787, 792 (1977) (stressing the strong power of Congress to control the admission of aliens). Such control is made possible by civil and criminal sanctions provided in the statute. Section 1326 is under the "General Penalty Provisions" chapter of the INA. The Court agrees with the Government's argument that the defendant's position would immunize defendant from § 1326 liability on account of fraud. This would frustrate the statutory purpose of the INA to keep previously deported aliens from reentering the country with the Attorney General's express prior permission. Based on the language and legislative policy behind of the statute, the Court rejects defendant's argument. See Salinas v. United States, 522 U.S. 52, 57 (1997) (holding that the court's role in applying a criminal law is to follow the plain meaning of the statute absent a clear showing of contrary legislative intention). The Court knows of no authority to the contrary and Defendant cites no case law in support of this argument.

Finally, Immigration law includes a procedure by which a previously deported alien can obtain the Attorney General's express consent, which includes the filing of a Form I-212 that asks for information about previous deportations. (See Government's Exhibit 3). Defendant does not indicate that he followed statutory procedure to obtain the requisite permission. The

5

Government demonstrates that there is evidence to support the element of lack of permission in the charge of unlawful reentry. At the hearing, the Government submitted a Certificate of Nonexistence of Record ("CNR"), marked Government's Exhibit 12, certifying the nonexistence of any record in defendant's file with Citizenship and Immigration Services that he obtained consent from the Attorney General. In reentry conviction cases, courts have consistently considered such certificates as evidence on the issue of consent for reentry. See e.g., United States v. Fajardo-Fajardo, 594 F.3d 1005,1008 (8th Cir. 2010) (a CNR suffices but is not necessary for the Government to satisfy its burden); DeLeon, 444 F.3d at 53 (rejecting the argument that there was insufficient evidence to support jury's conclusion that defendant lacked consent to reentry where the Government presented a CNR at trial); United States v. Sanchez-Milam, 305 F.3d 310, 313 (5th Cir. 2002) (holding that a CNR "will satisfy the Government's burden of providing that the Attorney General had not consented to an application for reentry").

## CONCLUSION

For the reasons set forth above, the issue of consent to reenter raised by defendant in his motion is not a matter of law that the Court can resolve without a trial under Federal Rule of Criminal Procedure 12(b)(2). Consequently, the Government should be given the opportunity to put on evidence as to the lack of the Attorney General's consent along with evidence of the other elements of its case at trial.

IT IS, THEREFORE, RECOMMENDED that defendant's motion to dismiss be DENIED. (Doc. 17).

IT IS FURTHER RECOMMENDED that defendant's request to deny the admission of evidence of his past criminal record be DENIED.[2]

Counsel are reminded they have fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

---

[2] Defendant's final argument raised in his motion, should the charge not be dismissed, is that the admission of defendant's past criminal record would violate Federal Rules of Evidence 401, 403, and 404. The issue of the admissibility of evidence at trial is best left to the discretion of the District Court. Defendant can raise this issue again at trial.

6

Dated this 29th day of May, 2014, at Jefferson City, Missouri.

                /s/ *Matt J. Whitworth*
                MATT J. WHITWORTH
                United States Magistrate Judge